OPINION OF THE COURT
Robert F. Doran, J.
Pursuant to the Public Health Law, the petitioners are the *703 owners and licensed operators of the Kings Harbor Care Center ("Kings Care”), a 360-bed, residential, skilled nursing facility, and the Kings Harbor Manor Facility ("Kings Man- or”), a 360-bed, health-related facility. Kings Care and Kings Manor have been separately and continuously licensed by the Department of Health since 1973 and 1975, respectively, until August 9, 1978 when, after a lengthy hearing, the petitioners’ operating certificates for Kings Care and Kings Manor were revoked.
The long history of the confrontation between the petitioners and the Department of Health began on October 14, 1976, when the department notified the petitioners that hearings would be held concerning alleged violations of various provisions of the Public Health Law, and the rules and regulations promulgated thereunder, in the operation of Kings Care and Kings Manor, for the purpose of determining whether or not the Commissioner of Health should revoke, suspend, limit or annul petitioners’ operating certificates for Kings Care and Kings Manor. For various reasons, the hearings were not commenced until December, 1977. The hearings were concluded in July, 1978.
During the course of the hearings, the petitioners in February, 1978 commenced the first-entitled proceeding, Proceeding No. 1, in Supreme Court, Albany County, seeking first, a declaratory judgment that the petitioners were entitled to an immediate adjustment of their Medicaid program reimbursement rates to compensate them for the additional cost of personnel necessary to maintain substantial compliance with the operating standards mandated. The second cause of action was for a declaratory judgment that if they were not entitled to be presently reimbursed for the cost of additional personnel, then their operating certificates could not be revoked, suspended, limited or annulled, nor could any fines or civil penalties be imposed upon them as a result of any operating deficiencies resulting from understaffing. The respondents moved to dismiss the petition in that action. By order dated June 9, 1977, Justice Cholakis denied the motion to dismiss, directed the service of an answer by the respondent, and authorized the petitioners to renotice the matter for hearing upon two days’ notice. However, nothing was done by the petitioners concerning Proceeding No. 1 until December 29, 1978 when the petitioners moved to consolidate Proceeding No. 1 with Proceeding No. 2.
*704 After conclusion of the hearings in July, 1978 in Proceeding No. 2, the hearing officer made an interim report wherein he sustained alleged violations of various provisions of the Public Health Law and the rules and regulations thereunder and recommended revocation of petitioners’ operating certificates for Kings Care and Kings Manor. By order dated September 7, 1978, the Executive Director of the Office of Health Systems Management of the Department of Health, on behalf of the Commissioner of Health, adopted the findings of fact, conclusions of law and recommendations of the hearing officer and he revoked petitioners’ operating certificates.
Then, on September 13, 1978, the petitioners, by order to show cause, commenced Proceeding No. 2 pursuant to CPLR article 78. The petition seeks a judgment annulling and vacating the revocation of petitioners’ operating certificates.
Various stay orders have been granted to the petitioners, which in effect have stayed the enforcement of the revocation order of the Department of Health.
The first cause of action in Proceeding No. 2 alleges that the order of revocation of September 7, 1978 is not, on the entire record, supported by substantial evidence. Both sides agree that there is a substantial evidence problem involved. Thus, Proceeding No. 2 must be transferred to the Appellate Division and this court will so order (CPLR 7804, subd [g]).
In answering the petition in Proceeding No. 2, the respondent alleges two counterclaims. The first counterclaim requests the appointment of a caretaker pursuant to section 2806-b of the Public Health Law (L 1978, ch 713). The second counterclaim, in the alternative, seeks the appointment of a receiver pursuant to subdivision 2 of section 2810 of the Public Health Law. The respondent claims that the appointment of a caretaker or a receiver is needed because there is a very real and substantial present danger to the health and safety of the patients in both facilities which must be immediately remedied pending the final outcome of the appeal to the Appellate Division.
Initially, the petitioners opposed the appointment of either a caretaker or a receiver. However, because of subsequent developments, in particular the decision by the Appellate Division, Second Department (Schwartzberg v Whalen, 66 AD2d 881), the petitioners are now anxious to have a caretaker appointed for Kings Care. The reason for the switch is that the decision of the Appellate Division, Second Depart *705 ment, in effect has terminated any Medicaid reimbursement by the State for the Kings Care facility. The petitioners now claim they will be losing $30,000 a week, and under these circumstances, they wish to have a caretaker appointed. In any event, the petitioners still oppose the appointment of a caretaker or a receiver for Kings Manor.
It is now the position of the respondent, after argument on January 22, 1979, that the proper appointment is that of a receiver pursuant to subdivision 2 of section 2810 of the Public Health Law and not that of a caretaker. The respondent also requests appointment of a receiver for both facilities because he alleges that the facilities are operated as a single unit with one set of books. The respondent also alleges that a significant portion of the beds in the health-related facility, Kings Manor, are in a building physically connected to the skilled nursing facility, Kings Care, and are serviced by one kitchen. He finally alleges that, in the past, staff members have been shifted between the two facilities as the need arose and that this type of flexibility and personnel management is essential to efficient operation and if he is not appointed receiver for both facilities this flexibility might not be available.
It is the decision of this court that the proper appointment is that of a receiver, and it is the determination of this court that the receiver shall be the Commissioner of Health and that he shall be appointed receiver of both facilities — Kings Care and Kings Manor — upon service of the order.
The court also concludes that it is not necessary to have a hearing pursuant to section 2810 (subd 2, par b) of the Public Health Law wherein all interested parties could present evidence concerning the application of the respondent to have a receiver appointed. Under all the facts and circumstances of this particular case, and in particular the request by the petitioners themselves to have a caretaker appointed for the one facility, the court will decline to exercise its permissive discretion under section 2810 (subd 2, par b) to hold a hearing.
The court disagrees with the petitioners that the proper appointment should be that of a caretaker. Careful examination of sections 2806 and 2806-b of the Public Health Law (see L 1978, chs 713, 714) indicates the Legislature has created an alternative vehicle for the protection of alleged poorly operated nursing homes and health-related facilities. In the legislative declaration of chapter 713 of the Laws of 1978, it is *706 specifically pointed out that chapter 713 was intended to provide a new mechanism wherein the health, safety and welfare of patients can be adequately safeguarded during the pendency of a proceeding to revoke the operating certificate of a nursing home or residential health care facility. It is obvious that the intention was that if the commissioner finds operating deficiencies upon inspection of a facility which in his estimation jeopardize the health and safety of the patients, he can, instead of holding a lengthy section 2806 hearing himself, immediately commence a special proceeding in court, and at the same time, petition the court to appoint a caretaker prior to the hearing in court. (See new Public Health Law, § 2806-b.) Thus, the Legislature has created, in the opinion of this court, an alternative procedure and not a new exclusive procedure.
In short, the commissioner can, if he wishes, commence a section 2806 hearing, and if it is determined after that hearing that the operating certificate should be revoked, he can then seek the appointment of a receiver pursuant to subdivision 2 of section 2810.
However, now under the new legislation, if the commissioner feels that the situation cannot await the completion of lengthy hearings by his department, then he can use the alternate procedure and commence a special proceeding in Supreme Court and immediately seek the appointment of a caretaker.
In the end result, it really makes no difference what this person is designated since a caretaker under new section 2806-b of the Public Health Law has exactly the same powers as a receiver.
But in keeping with what has taken place here and in keeping with the legislative scheme, it is more proper here to designate the commissioner a receiver, instead of a caretaker, since there has already been completed lengthy section 2806 hearings by the Department of Health.
On the second motion, it is the decision of this court that petitioners’ motion to consolidate Proceeding No. 1 and transfer that matter to the Appellate Division must be denied. It is the law of this case, pursuant to Judge Cholakis’ order, that this matter can be renoticed for argument. Under the present posture of Proceeding No. 1, the respondent must be given his day at the trial level of Supreme Court. His answer sets forth several defenses including the defense that the petitioners in Proceeding No. 1 have not exhausted their administrative *707 remedies. Even if that defense were determined to be an invalid defense, it seems to this court that there has to be some sort of affidavits or testimony concerning the question of the alleged failure of the respondents to provide sufficient Medicaid reimbursement. Only after this takes place can there be something that could be transferred to the Appellate Division for its determination. The motion to consolidate is denied without prejudice to a renoticing of that matter in accordance with Judge Cholakis’ order.
In the exercise of the court’s discretion pursuant to the CPLR, the court will allow the petitioners’ motion to amend the petition in Proceeding No. 2. In essence, the petitioners have raised the question on the motion to amend whether or not the entire prior proceeding to revoke the operating certificates is now null and void by virtue of sections 2806 and 2806-b of the Public Health Law (see L 1978, chs 713, 714). The court, by virtue of its decision to appoint a receiver and the discussion pertaining thereto, supra, has held contrary to the position that the petitioners wish to raise by these amendments. In order to have a proper review by the Appellate Division of this holding, the motion to amend the petition in Proceeding No. 2 will be granted.
To recap: (1) the motion to transfer Proceeding No. 2 to the Appellate Division for determination is granted; (2) the counterclaim by the respondent to have him appointed a receiver for both the Kings Care and Kings Manor facilities is granted; (3) the motion to consolidate Proceeding No. 1 with Proceeding No. 2 for determination by the Appellate Division is denied without prejudice to the petitioners to renotice Proceeding No. 1 in accordance with Judge Cholakis’ order; and (4) the motion to amend the petition in Proceeding No. 2 is granted.